

**U.S. Department of Justice**
*Civil Division*
*Federal Programs Branch*

June 22, 2018

<u>**Via CM/ECF**</u>
The Honorable Paul W. Grimm
United States District Judge
United States Courthouse
6500 Cherrywood Lane
Greenbelt, Maryland 20770

      Re:    *NAACP, et al. v. Bureau of the Census, et al.*, No. 8:18-cv-0891-PWG (D. Md.)

Dear Judge Grimm:

      Pursuant to the June 13, 2018 teleconference with the Court, *see* ECF No. 36, Defendants hereby submit this letter to update the Court on the status of Plaintiffs' expedited requests for voluminous materials. Despite three letters, a teleconference with the Court, and several calls, Plaintiffs have rejected Defendants' good-faith efforts to provide information possibly relevant to Plaintiffs' arguments in opposition to Defendants' motion to dismiss. We therefore write the Court separately to explain our position.

      ***Defendants' Motion to Dismiss*:** As discussed with the Court on June 13, 2018, Defendants will file a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on July 13, 2018. This motion will argue, *inter alia*, that the Court lacks jurisdiction over this case because (1) Plaintiffs lack standing to bring their claim, (2) Plaintiffs' claim is not ripe for review, and (3) Plaintiffs' claim is barred by the political-question doctrine. *See* ECF No. 31.

      ***Plaintiffs' Requests*:** Plaintiffs filed a Complaint on March 28, 2018, *see* ECF No. 1, alleging that, nearly two years before a single person is counted, preparations for the 2020 Census are so deficient as to violate the Enumeration Clause of the Constitution. Less than a month later—and over 40 days prior to Defendants' answer date under Rule 12(a)(2)—Plaintiffs filed a letter with the Court seeking expedited discovery to aid "expert witnesses [in] demonstrate[ing] the insufficiency of Defendants' preparations and the resulting harms." ECF No. 19 at 2. The Court held a teleconference on May 8, 2018, and thereafter ordered that "Plaintiffs shall reach out to the [Defendants] and identify the targeted discovery they seek." ECF No. 27.

      On May 25, 2018, Plaintiffs sent a letter to Defendants seeking seven broad categories of information, totaling over 70 separate requests. *See* ECF 34-1. Chief among these requests were "key historical benchmarks" comparing eight different aspects of the 2010 and 2020 Censuses in six separate ways. *See id.* at 1-2. Other categories of information included everything from "[d]ocuments pertaining to the 2020 Census online response initiative" to "[d]ocuments pertaining to Hard-to-Count Communities" to [d]ocuments pertaining to the funding of the 2020 Census," each with their own sub-requests. *Id.* at 2-4. The Parties conferred regarding these requests on June 7, 2018. During that call, Defendants explained their position that there should be no discovery in this case prior to resolution of Defendants' motion to dismiss raising substantial justiciability concerns. *See* ECF No. 31. Nonetheless, in an effort to provide valuable information, Defendants offered to gather internet links for publicly-available census information that appeared to address many, if not all, of Plaintiffs' requests. On June 11, 2018, Defendants provided over 100 such internet links to over a thousand pages operational reports, benchmark updates, budget information, and public presentations on census preparations. *See* ECF 34-2.

      On June 12, 2018, pursuant to the Court's instructions, Plaintiffs filed a letter with the Court, asserting that the requests in their May 25 letter were "narrowly targeted", but expressing their "willingness to consider narrowing certain requests." ECF No. 34 at 2. While Plaintiffs included some suggestions for narrowing certain

requests, other requests were left unaltered, such as the "key historical benchmarks" category. *Id.* at 3. During the June 13, 2018 teleconference, the Court noted the breadth of Plaintiffs' requests and urged that Plaintiffs go a "considerable distance" to narrow them, especially by focusing on "critical" information that is "relevant to Defendants' motion to dismiss." The Parties conferred again on June 15, 2018.

On June 18, 2018, Plaintiffs sent a third letter to Defendants, again revising their expansive requests. While Plaintiffs agreed to eliminate requests for information that Defendants explained did not exist, such as their request for "[d]ocuments pertaining to . . . immigration enforcement and the 2020 Census," Plaintiffs expanded other categories. *See* ECF No. 39-1. Pls.' Ex. A, June 18, 2018 Ltr. from S. Kohlmann. For example, although the "historical benchmarks category" asked for only actual numbers rather than projections from 2008-09, it added sub-parts, including a request for "internal risk analyses or concerns raised relating to reductions in subcategories (a) through (h) for the 2020 Census." *Id.* at 2. The Parties conferred on June 21, 2018. During that call, Defendants reiterated the overbreadth of Plaintiffs' requests given the current posture of the case and the undue burden that responding thereto would impose on the Census Bureau. Nevertheless, Defendants offered to search the relevant databases and produce data responsive to Plaintiffs' historical-benchmarks category, as well as search for and produce documents requested in new subcategory (1)(b) and new subcategory (4)(a). *Id.* at 2-4. Plaintiffs rejected this offer, which is described in further detail below.

***Defendants' Position*:** The Census Bureau advises that it already has spent approximately 100 hours performing preliminary searches and consulting subject-matter experts simply to evaluate the scope of Plaintiffs' requests. Defendants have also reasonably offered to produce data and documents possibly pertinent to Plaintiffs' opposition to the motion to dismiss: a comparison of preparations for the 2010 and 2020 Censuses. Nothing further should be required at this early point in the litigation, especially given that the issue of whether the Court has jurisdiction needs to be resolved.

As noted above, Defendants offered to search for and produce the following information:

- Numbers for each of the following categories as they existed on June 1, 2008; September 1, 2008; December 1, 2008; March 1, 2009; April 1, 2010; and June 1, 2018:
    - Area Census Offices, Regional Census Offices, Regional Census Centers, and Questionnaire Assistance Centers that Defendants have opened;
    - Census Bureau Employees that Defendants have hired;
    - The amount of money that Defendants have spent on the Integrated Partnership and Communications Campaign;
    - Partnership Specialists, Partnership Assistants, and Cultural Facilitators that Defendants have hired;
    - The amount of money that Defendants have spent on the Partnership Program; and
    - The amount of money that Defendants have spent on testing from 2016 through 2018.
- Documents to show how the number and location of Area Census Offices was determined.
- A representative example of an agreement regarding the sharing of administrative data with a state government.

Producing these data and documents will be burdensome for the Census Bureau, as it involves consulting subject-matter experts, delving into various databases, extracting relevant data for specific time periods, reviewing data, creating new documents, and obtaining relevant clearances before release. The Census Bureau estimates that undertaking this process will involve over 230 hours of labor, in addition to the 100 hours previously spent on preliminary searches.

Defendants feel this offer is more than reasonable for at least five reasons. *First*, the Census Bureau is open and transparent about its preparations for the 2020 Census, and there is a wealth of available information

2

in the public domain that directly relates to Plaintiffs' requests—the over 100 internet links to detailed reports about all aspects of the decennial census already provided by Defendants barely scratch the surface. *Second*, Plaintiffs have failed to mine this significant trove of publicly-available information, as even their most recent requests continue to use terms and categories distinct from those used by the Census Bureau. For example, Plaintiffs' request 2(a) asked for "documents or memoranda regarding the projected differential online response rate for low-income communities and/or communities of color." ECF No. 39-1 at 2. But the Census Bureau does not categorize response rates by "low-income communities" or "communities of color". As publicly-available documents reveal, a properly "targeted" request would ask for differential response rates for categories like non-Hispanic whites, Hispanics, African Americans, Asians, American Indian/Alaska Native, and Some Other Race, or people at or below a particular income threshold used on the American Community Survey for purposes of analysis. *Third*, Plaintiffs have continuously noted the paramount importance of historical data to compare the 2010 and 2020 Censuses, which Defendants' offer provides. *Fourth*, despite the Court's instruction, Plaintiffs have continued to demand data and documents that are unrelated to information that would aid them in responding to Defendants' threshold jurisdictional arguments. For instance, Plaintiffs have provided no explanation for how "documents sufficient to show the reasons for Defendants' 2018 test cancellations," ECF No. 39-1 at 3, could assist them in establishing jurisdiction. *Fifth*, Plaintiffs latest round of purportedly-narrowed requests are extraordinary burdensome, especially for the Census Bureau, which is preparing to conduct the largest census in American history. Indeed, the Census Bureau estimates that searching for and possibly producing information responsive to Plaintiffs' June 18 letter would require over 3,600 hours of labor.

Finally, it is important to reiterate that the decennial census is a public exercise, and that the Census Bureau is committed to transparency. As Defendants have explained throughout the meet-and-confer process, the vast majority of Defendants' work is public, and the vast majority of data and documents Plaintiffs requested are either publicly available or exist only as iterative drafts. For the reasons discussed above, Defendants should not be required to provide any data or documents beyond what they have already offered. We thank the Court for its consideration of this matter.

Very truly yours,

CHAD A. READLER
Acting Assistant Attorney General

CARLOTTA P. WELLS
Assistant Director, Federal Programs Branch

　/s/   Stephen Ehrlich
STEPHEN EHRLICH
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Tel.: (202) 305-9803
Email: stephen.ehrlich@usdoj.gov

*Attorneys for Defendants*

cc: Counsel of Record (via CM/ECF)