**Via CM/ECF**                                                                                    February 11, 2019

The Honorable Paul W. Grimm
United States District Judge
United States Courthouse
6500 Cherrywood Lane
Greenbelt, Maryland 20770

      Re: *NAACP, et al. v. Bureau of the Census, et al.*, No. 8:18-cv-0891 (D. Md.)

Dear Judge Grimm:

    Plaintiffs submit this letter to describe their planned motion for leave to file a Second Amended Complaint ("SAC"). ECF No. 3. The proposed SAC would add claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, reinstate a constitutional claim for injunctive relief under the Enumeration Clause, and update fact allegations. The Defendants' release on February 1, 2019 of their final 2020 Census Operational Plan ("Final Operational Plan") prompts the proposed SAC. "The court should freely give leave [to amend] when justice so requires." *Brent v. Priority 1 Auto. Grp.*, 2016 WL 7178302, at *2 (D. Md. Dec. 9, 2016) (Grimm, J.) (quoting Fed. R. Civ. P. 15(a)(2)).

    **1. APA Claims Arising From Defendants' Release of Their Final Operational Plan**

    The Final Operational Plan[1] constitutes final agency action fit for judicial review pursuant to the APA. *See Sackett v. EPA*, 566 U.S. 120, 129 (2012) (recognizing "presumption of reviewability for all final agency action."). Defendants expressly stated that the February 1 release "is the final operational plan and reflects our final design" for the 2020 Census.[2]

    Whether an agency action is final depends on two factors. The action must "mark the consummation of the agency's decisionmaking process," *Bennett v. Spear*, 520 U.S. 154, 177 (1997), and it "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* The Final Operational Plan satisfies both criteria. It represents the conclusion of the 2020 Census' planning stage and the start of the operational stage.[3] It also determines the obligations of Defendants and their employees by detailing the manner in which

---

[1] *2020 Census Operational Plan: A New Design for the 21st Century* (Version 4.0), U.S. Census Bureau (December 2018), https://www2.census.gov/programs-surveys/decennial/2020/program-management/planning-docs/2020-oper-plan4.pdf. Although dated December 2018, the Plan was made public for the first time on February 1, 2019.

[2] Deborah Stempowski, *2020 Census Operational Plan* at Slide 19, U.S. Census Bureau (Feb. 1, 2019), https://www2.census.gov/programs-surveys/decennial/2020/program-management/pmr-materials/02-01-2019/pmr-op-plan-2019-02-01.pdf.

[3] *02/01/19: 2020 Census Quarterly Program Management Review (PMR)* at 24:35, U.S. Census Bureau (Feb. 1, 2019), https://www.youtube.com/watch?v=b96n0AiZZSE (explanation by Associate Director for Decennial Census Programs that the final Operational Plan "culminates years of planning" and marks a transition "into the operational phase of the 2020 Census").

they will conduct the 2020 Census. That the agency may subsequently revise the plan does not undercut its finality. The possibility of revision "is a common characteristic of agency action, and does not make an otherwise definitive decision nonfinal." *Army Corps. of Eng'rs v. Hawkes Co.*, 126 S. Ct. 1807, 1814 (2016). What matters is that the agency "for all practical purposes 'has ruled definitively.'" *Id.*; *see also Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233, 285 (4th Cir. 2018), *vacated on other grounds*, 138 S. Ct. 2710 (2018) ("[T]he measure of finality is also 'pragmatic'; an agency action is 'immediately reviewable' when it gives notice of how a certain statute will be applied.").

Plaintiffs seek leave to add two APA claims, neither of which could have been brought before the final agency action embodied in the February 1, 2019 Plan. Plaintiffs' proposed APA claims fit comfortably within the tradition of census litigation. As this Court has recognized, courts have often adjudicated challenges to "discrete agency decision[s]" involving the census, especially under the APA. ECF No. 64 at 5; *see also id.* at 25.

*First*, Plaintiffs will allege that discrete, final decisions communicated in the Plan are arbitrary and capricious under 5 U.S.C. § 706(2)(A). Under this section, "[n]ot only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational" and explainable based on "consideration of the relevant factors." *Michigan v. EPA*, 135 S. Ct. 2699, 2706 (2015). As the proposed SAC will allege, the Plan includes several discrete decisions which are not based on consideration of the relevant factors, such as the decision to hire significantly fewer enumerators than for the 2010 Census and the decision to cancel (not merely postpone) crucial field tests. These decisions, individually and cumulatively, violate the APA's ban on arbitrary and capricious agency action.

*Second,* these same decisions in the Plan should also be set aside as "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), because, individually and cumulatively, they violate the constitutional mandate to conduct an "actual Enumeration" of the people. U.S. Const. art. I § 2 cl. 3.

## 2. Plaintiffs Seek to Reinstate Claims Now Ripe Under the Enumeration Clause

Plaintiffs seek to reinstate their previously dismissed claims under the Enumeration Clause as the release of the Final Operational Plan renders them ripe. The Plan creates an unambiguous opportunity for judicial review of the Bureau's decisions without entanglement "in abstract disagreements over administrative policies," *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).

Ripeness depends on three factors: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998). The constitutional claims that Plaintiffs seek to reinstate satisfy this test because the Plan is the final document encompassing "the design for conducting the 2020 Census," and "covers all operations to execute the 2020 Census" including what will be done "and, at a high-level, how the work will be conducted." Stempowski, *2020 Census Operational Plan* at Slide 19.

*First,* a delay in judicial review would "cause hardship to the Plaintiffs," *Ohio Forestry Ass'n*, 523 U.S. at 733, because the Plan means the Census Bureau has chosen methods for the 2020 Census that do not bear "a reasonable relationship to the accomplishment of an actual enumeration of the population." *Wisconsin v. City of New York*, 517 U.S. 1, 20 (1996). The Final Operational Plan is therefore a "procedural violation" that ripens for review before actually causing a census undercount. *U.S. House of Reps. v. U.S. Dep't of Commerce*, 11 F. Supp. 2d 76, 91 (D.D.C. 1998). Further, since the Plan reflects the 2020 Census's final design, it marks "the point at which use of th[e] [challenged] procedure is 'certainly impending.'" *Id.*

Moreover, Plaintiffs are "*already* suffering harm . . . due to the diversion of valuable resources" and "time is of the essence." *New York v. U.S. Dept. of Commerce*, 18-CV-2921, 2019 WL 190285 at *88 (S.D.N.Y. Jan. 15, 2019). Now that it is clear that the Census Bureau will not formulate a better plan on its own, Plaintiff NAACP and its members will have no choice but to divert more resources toward promoting 2020 Census participation in Prince George's County and across the country.

*Second,* judicial review at this stage will not interfere with further planning because Plaintiffs' claims no longer "rest[] upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *U.S. House of Reps.*, 11 F. Supp. 2d at 90. Each discrete choice embodied in the Plan is just as final as Commerce Secretary Wilbur Ross's "final agency action" in deciding to include the citizenship question. *New York,* 2019 WL 190285, at *89. This Court noted that with sufficient funding, it is "inevitable that many of the alleged deficiencies in staffing, census design, and testing will be addressed, and, where deficient, corrected." ECF No. 64 at 32. But the Defendants' Final Operational Plan confirms that these deficiencies are a purposeful design and will not be corrected.

*Third,* the Plan provides sufficient factual development to facilitate review as it answers previously open questions about the Bureau's future conduct. For example, the Plan includes a choice not to reinstate cancelled field tests. As this Court has recognized, "there may come a date when a failure to have conducted the testing may itself be evidence that Defendants' preparations are insufficient." ECF No. 64 at 33 n.14. We respectfully submit that that time has come.

### 3. Plaintiffs Seek to Update Their Factual Allegations

Plaintiffs seek to revise the factual allegations in their Complaint to reflect developments in the plans for the 2020 Census since they filed their First Amended Complaint in June 2018. The SAC would delete outdated allegations and allege new facts based on recent developments.

Plaintiffs also seek to elaborate on allegations regarding the standing of Plaintiff NAACP. The Court stated in its January 29, 2019 opinion that the NAACP lacked "standing to represent all hard-to-count populations across the United States," given that a lost Representative in one state will be offset by a gain in another. ECF No. 64 at 40 n.17. An organization need not allege injuries to *all* of its members. Supplemental allegations will clarify the injury suffered by the NAACP and many of its members when a nationwide undercount of African Americans disproportionately reduces the political representation and federal funding of localities and states with large African American populations.

3

Respectfully submitted,

/s/Michael J. Wishnie

Rachel Brown,* Law Student Intern
Casey Gilfoil,* Law Student Intern
Daniel Ki,* Law Student Intern
Nikita Lalwani,* Law Student Intern
Abigail Olson, Law Student Intern
Joseph Schottenfeld, Law Student Intern
Charlotte Schwartz, Law Student Intern
Jeffrey Zalesin, Law Student Intern
Joshua Zoffer,* Law Student Intern
Renee Burbank[†]
Michael J. Wishnie (Bar No. 20350)
Rule of Law Clinic
Yale Law School[4]
127 Wall Street
New Haven, CT 06511
Tel: (203) 436-4780
michael.wishnie@ylsclinics.org
*Counsel for all Plaintiffs*

Jeremy M. Creelan, *pro hac vice*
Susan J. Kohlmann, *pro hac vice*
Jacob D. Alderdice, *pro hac vice*
Jenner & Block LLP
919 Third Avenue
New York, NY 10022-3908
*Counsel for all Plaintiffs*

Khyla D. Craine (Bar No. 14117)
Anson C. Asaka (Bar No. 20456)
National Association for the Advancement
of Colored People, Inc.
4805 Mt. Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5797
Fax: (410) 358-9350
*Counsel for Plaintiffs NAACP and Prince George's County NAACP Branch*

---

[4] This letter does not purport to state the views of Yale Law School, if any.
*Law student interns. Petition to practice forthcoming.

[†] Application for D. Md. admission pending

## **CERTIFICATE OF SERVICE**

I, Michael J. Wishnie, certify that copies of the foregoing letter were served this 11th day of February, 2019 upon all counsel of record by ECF.

/s/ Michael J. Wishnie<br>
Michael J. Wishnie