<u>Via CM/ECF</u>                                                                                          February 19, 2019
The Honorable Paul W. Grimm
United States District Judge

        Re: *NAACP, et al. v. Bureau of the Census, et al.*, No. 8:18-cv-0891 (D. Md.)

Dear Judge Grimm:

       Pursuant to the Court's instructions during the February 6, 2019 telephone conference, counsel for all parties conferred on February 15, 2019 and jointly submit this letter setting forth their positions regarding discovery on the funding issue. *See* ECF No. 66.

       **A.  Discovery Items on Which the Parties Agree**

       The parties jointly propose that the Court (1) permit Plaintiffs to conduct one Rule 30(b)(6) deposition on the funding issue; (2) allow each side to disclose up to three experts; and (3) enter the following scheduling order:

| | |
|---|---|
| 15 Days Following Court's Order: | Deadline for conference about discovery of electronically stored information |
| 90 Days Following Court's Order: | Plaintiffs' Rule 26(a)(2) expert disclosures |
| 110 Days Following Court's Order: | Defendant's Rule 26(a)(2) expert disclosures |
| 130 Days Following Court's Order: | Plaintiff's rebuttal Rule 26(a)(2) expert disclosures |
| 158 Days Following Court's Order: | Rule 26(e)(2) supplementation of disclosures and responses |
| 160 Days Following Court's Order: | Discovery deadline; submission of status report |

       **B.  Plaintiffs' Position on Discovery Items as to Which the Parties Do Not Agree**

       Through evidence obtained in discovery, Plaintiffs seek to show "that the currently appropriated funds [for the Census Bureau] are insufficient to conduct the 2020 census." ECF No. 64 at 49. Plaintiffs intend to prove their constitutional underfunding claim by demonstrating that (a) current appropriations do not meet the Bureau's estimated needs for the 2020 census and (b) some of the Bureau's estimates themselves are based on unreasonable assumptions and do not accurately represent "the funding *actually needed* to conduct the census in 2020." *Id.* (emphasis added); *see also Census Bureau Improved the Quality of Its Cost Estimation but Additional Steps Are Needed to Ensure Reliability*, GOV. ACCOUNTABILITY OFF. (Aug. 17, 2018) (documenting the reasons why the Bureau's estimates remain unreliable). Moreover, Plaintiffs intend to establish that the "underfunding [will] lead[] to a disproportionate undercount, which in turn [will] result in reduced funding and representation." ECF No. 64 at 41.

       To prove this claim, Plaintiffs seek targeted and expedited discovery regarding two issues: (1) the Bureau's budget requests and the assumptions underlying their estimates and (2) the extent to which insufficient funding limits the Bureau's ability to perform its constitutional duty to enumerate the population accurately. Both issues are critical to determining whether the Bureau is adequately funded for the 2020 census. Discovery regarding the Bureau's budget requests and the

reliability of those requests, whether or not Congress approves them, is the only means of determining the sufficiency of the Bureau's funding.

Plaintiffs request that the Court permit them to (a) conduct up to three standard oral depositions and (b) propound not more than fifteen targeted and narrow requests for production, fifteen interrogatories, and fifteen requests for admission (other than requests for admission related to the admissibility of documents). Plaintiffs do not presently anticipate the need for any third-party discovery. If party discovery were to reveal that essential information on the adequacy of funding is maintained by third parties, however (such as vendors who have contracted with the Census Bureau to perform essential activities including cybersecurity or outreach to hard-to-count communities), Plaintiffs may seek third-party discovery as well.

*Depositions.* Plaintiffs request that the Court permit them to conduct up to three standard oral depositions, each of no more than one day (seven hours). As Plaintiffs have alleged, the Bureau has made unfounded assumptions regarding the costs of several, specific aspects of the 2020 Census, including community outreach, census infrastructure, and cybersecurity. First Amended Complaint ("FAC") ¶¶ 46, 55-59, 81-83.[1] A single, targeted 30(b)(6) deposition of a Bureau official familiar with the Bureau's budget requests, assumptions, and processes will yield information regarding the Bureau's funding generally. But it will likely not be sufficient to understand the Bureau's funding assumptions and estimations in discrete areas that are vital to the census' success. Plaintiffs expect to need to depose, for example, officials who oversee or are knowledgeable about field operations and communications, given alleged deficiencies and increasing costs in these areas. Plaintiffs request that the Court allow these depositions now, rather than later, to enable discovery to proceed without undue delay or repeated deposition-by-deposition briefing. Additionally, Plaintiffs respectfully request that the 30(b)(6) deposition be conducted without advance limitations on the number of topics.

*Written Discovery.* First, Plaintiffs propose to issue up to fifteen requests for production (RFPs), half the number authorized by the Local Rules. Md. Local Rules 104. These would include requests for documents pertaining to the estimated costs of the 2020 census (e.g. the Bureau's revised lifecycle cost estimate), the historical costs of the census, and the effects of limited funding on the Bureau's ability to perform its constitutional duty to enumerate the population accurately (e.g. documentation about the effects of the multi-year cap on 2020 Census funding and the 35-day government shutdown). Second, Plaintiffs propose to issue no more than fifteen interrogatories, consistent with this Court's typical discovery order. Interrogatories would include requests pertaining to the preparation of the Bureau's budget estimates (e.g. to determine how the Bureau's 2018-2022 strategic plan was developed and what cost-related elements were considered) and the effects of limited funding and the government shutdown on the 2020 census. Third, Plaintiffs

---

[1] In further demonstration of the Bureau's poor budget estimates, the Bureau awarded a new, $53.6 million more expensive printing contract after the original printing contractor went bankrupt, Hansi Lo Wang, After Botching 2020 Census Contract, Officials Pick New Printer For $115 Million, NPR (Jan. 8, 2019), https://www.npr.org/2019/01/08/683191846/after-botching-2020-census-contract-officials-pick-new-printer-for-115-million, and added a citizenship question that the Bureau itself estimates will raise costs by at least $91.2 million, Dwyer Gunn, Census Bureau Economists Provide More Evidence Against The Citizenship Question, Pacific Standard (Aug. 31, 2018), https://psmag.com/news/census-bureau-economists-down-on-the-citizenship-question. Yet, the Bureau does not think these additional costs will change the lifecycle cost estimate, an estimate they are currently in the process of reviewing.

propose to issue no more than fifteen requests for admission (other than requests related to the authenticity or admissibility of documents for trial). These requests would relate, *inter alia*, to the effects of the government shutdown on the census and the effects of previous funding shortages.

Defendants prematurely invoke the deliberative process privilege. *Infra* at 5. Most of the information relating to the funding issue will not be privileged (e.g. the cost of any additional testing of the effects of the citizenship question), and, where necessary, Courts may pierce deliberative process. *See, e.g., McKinley v. FDIC*, 744 F.Supp.2d 128 (D.D.C. 2010) (citing *EPA v. Mink*, 410 U.S. 73, 86-86 (1973) ("It is well-established that [a] court's decision in a discovery case may rest in part on an assessment of the particularized need of the party seeking discovery.")).

Plaintiffs' proposed discovery plan is "proportional to the needs of the case, considering" *inter alia*, "the importance of the issues at stake in the action" and "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1); *see also MAO-MSO Recovery II, LLC v. Gov't Employees Ins. Co.*, Nos. PWG-17-711, PWG-17-964, 2018 WL 999920, at *14 (D. Md. 2018) ("[Discovery] must be proportional to the issues raised by the pleadings."). The stakes in this case could hardly be higher: at issue are the outcome of congressional reapportionment, intrastate redistricting, and the disbursement of hundreds of billions of dollars in federal funds. Given these stakes, Plaintiffs' request for three standard oral depositions, fifteen requests for production, fifteen interrogatories, and fifteen requests for admission is reasonable. These requests fall below the limits established by the Local Rules and are consistent with the guidelines in this Court's typical discovery order.[2]

### C. Defendants' Position on Discovery Items as to Which the Parties Do Not Agree

*Depositions*. As set forth above, and as indicated by the Court, Defendants agree that Plaintiffs may take one deposition pursuant to Rule 30(b)(6) regarding census funding. Given the narrow scope of discovery noted by the Court, Defendants propose a limit of five 30(b)(6) topics, all of which should relate to funding for the 2020 Census. The Court, however, should not allow Plaintiffs to take any other depositions at this time. As an initial matter, the Court itself recognized on our February 6, 2019 teleconference that Plaintiffs should first take a 30(b)(6) deposition, then demonstrate the need for any further depositions thereafter. Defendants agree with the Court's approach and note that, assuming Plaintiffs narrowly tailor their 30(b)(6) topics to their intended purpose such that Defendants can reasonably prepare their designee, then it is unclear what further information Plaintiffs could need.

As noted above, Plaintiffs seek depositions beyond the Rule 30(b)(6) deposition that pertain to cybersecurity, infrastructure, and community outreach. It thus appears that Plaintiffs are attempting to use the Court's authorization for targeted discovery on funding as a gateway to a broader fishing expedition, a goal they have pursued since filing their original Complaint. *See,*

---

[2] As an illustrative comparison, the discovery in the census cases challenging the citizenship question cited by Defendants included the administrative record (totaling thousands of pages), at least six depositions, and 45 requests for production from the Plaintiffs alone. *Joint Status Report* at 2, *New York v. United States Dep't of Commerce*, 339 F.Supp.3d 144 (S.D.N.Y. 2018) (No. 305). Although APA cases often center on the administrative record, the Court in *New York* granted Plaintiffs' request for discovery beyond the record because "Plaintiffs had made a strong preliminary . . . showing that they will find material . . . indicative of bad faith," undermining Defendants' argument that their estimates should be taken at face value. *Id.* at 147 (internal quotations omitted).

*e.g.*, ECF Nos. 19, 34, 39. As the Court noted on our teleconference, however, discovery is to be narrow and should focus on the sole remaining claim in this case: funding for the 2020 Census. Plaintiffs can include topics related to the *funding* for cybersecurity, infrastructure, and community outreach in their Rule 30(b)(6) deposition notice, thus obviating any need for further depositions. The Court should thus reject Plaintiffs' request for additional depositions.

*Written Discovery*. Defendants do not believe any written discovery is necessary for Plaintiffs to obtain information relevant to their funding claim. As the Court explained, "it will require no more than elementary school arithmetic to demonstrate (*from the Bureau's existing estimates*) what funds are needed to complete the 2020 Census, and the shortfall the funding lapse has caused."[3] *NAACP v. Bureau of Census*, 2019 WL 355743, at *16 (D. Md. Jan. 29, 2019) (emphasis added). The Court further noted that "the Census Bureau *already has gone on record* to project the funds that it will need to complete the 2020 Census, and it will not require Napoleonic insight to determine whether the current appropriations meet the Secretary's estimated needs." *Id.* at *22 (emphasis added).

Plaintiffs already have access to all documents needed to "determine whether the current appropriations meet the Secretary's estimated needs." *Id.* They have the President's budgetary requests for the 2020 Census. *See, e.g.*, Appendix, Proposed Budget of the United States Government, Fiscal Year 2019 at 179;[4] Appendix, Proposed Budget of the United States Government, Fiscal Year 2018 at 179;[5] Appendix, Proposed Budget of the United States Government, Fiscal Year 2017 at 185.[6] They have the Census Bureau's Life Cycle Cost Estimate, which also estimates the funding needed for the 2020 Census. *2020 Census Life-cycle Cost Estimate Executive Summary (Version 1.0)*, U.S. Census Bureau (December 2017), https://www2.census.gov/programs-surveys/decennial/2020/program-management/planning-docs/2020-cost-estimate1.pdf. And they have the amounts of money appropriated by Congress for the 2020 Census, including the February 15, 2019 appropriation for Fiscal Year 2019 that may be used through 2021. *See, e.g.*, P.L. 116-6, 116th Cong. (2019), Consolidated Appropriations Act, 2019; P.L. 115-141, 115th Cong. (2018), Consolidated Appropriations Act, 2018; P.L. 115-31, 115th Cong. (2017), the Consolidated Appropriations Act, 2017. Plaintiffs can apply their "elementary school arithmetic," *NAACP*, 2019 WL 355743, at *16, to these "existing estimates," *id.*, and "current appropriations," *id.* at *22. No further documents will aid their calculation.

Plaintiffs have articulated no reason for needing documents beyond those cited above or information beyond that received in a Rule 30(b)(6) deposition of the Census Bureau, let alone any need that would justify 15 document requests, 15 interrogatories, and 15 requests for admission during this "expedited, focused discovery." *Id.* at *23.[7] Indeed, six cases challenging

---

[3] Defendants note that permanent appropriations have since been signed into law, allocating over $3 billion in Fiscal Year 2019 funding for the 2020 Census. *See* P.L. 116-6, 116th Cong. (2019), Consolidated Appropriations Act, 2019. Given this development, Defendants intend to file a pre-motion letter seeking to brief whether Plaintiffs' funding claim is nonjusticiable and moot.

[4] https://www.whitehouse.gov/wp-content/uploads/2018/02/appendix-fy2019.pdf

[5] https://www.govinfo.gov/content/pkg/BUDGET-2018-APP/pdf/BUDGET-2018-APP.pdf

[6] https://www.govinfo.gov/content/pkg/BUDGET-2017-APP/pdf/BUDGET-2017-APP.pdf

[7] Plaintiffs' admit that they seek discovery into not only "the [Census] Bureau's budget requests," but also the assumptions underlying [the Census Bureau's] estimates." *See, supra*. This strategy contravenes the Court's Opinion, as explained above, because the only issue identified by the Court is "whether the current appropriations meet the

a citizenship question on the 2020 Census coordinated full-blown discovery through the Southern District of New York, and this discovery yielded only six total interrogatories served on Defendants. It also bears repeating that Plaintiffs have previously obtained some discovery in this action and have already taken one Rule 30(b)(6) deposition regarding Census Bureau record keeping, so "any further discovery that may be permitted may be focused as precisely as possible." ECF No. 42 (the Court's letter order regarding pre-motion discovery). With the information gleaned from this prior Rule 30(b)(6) deposition, the material available in the above-cited documents, the information that will be gleaned from *another* Rule 30(b)(6) deposition, and with only "expedited, focused discovery" permitted, *NAACP*, 2019 WL 355743, at *23, Plaintiffs' request for such voluminous written discovery is entirely unwarranted.

Defendants also note that any additional documents Plaintiffs may seek—such as preliminary cost estimates or budgetary projections—are almost certainly privileged. The "deliberative process privilege protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Stone v. Trump*, 2018 WL 6305131, at *6 (D. Md. Nov. 30, 2018) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). Even purely factual information that is "inextricably intertwined" with deliberative material is privileged. *Id.* For this reason courts have routinely shielded cost estimates and budgetary projections from disclosure. *See, e.g.*, *Quarles v. Dep't of Navy*, 893 F.2d 390, 392–93 (D.C. Cir. 1990) (finding "cost estimates" privileged because "[t]hey derive from a complex set of judgments—projecting needs, studying prior endeavors and assessing possible suppliers," and noting that cost estimates "partake of just that elasticity that has persuaded courts to provide shelter for opinions generally"); *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1121 (9th Cir. 1988); *Blank Rome LLP v. Dep't of the Air Force*, 2016 WL 5108016, at *12 (D.D.C. Sept. 20, 2016); *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 643 F. Supp. 2d 439, 445 (S.D.N.Y. 2009) (finding a draft budget proposal "both predecisional and deliberative concerning budget priorities"); *Hornbostel v. U.S. Dep't of Interior*, 305 F. Supp. 2d 21, 31 (D.D.C. 2003) ("cost estimates are of the deliberative and predecisional nature intended to be protected by the deliberative process privilege"); *Taylor-Woodrow Int'l v. U.S. Dep't of Navy*, 1989 WL 1095561, at *3 (W.D. Wash. Apr. 5, 1989) ("[t]he courts have established that cost estimates are privileged documents . . ."). Allowing Plaintiffs to embark on an aimless hunt for predecisional budget documents will only burden the Census Bureau with searching for privileged documents, burden Defendants with reviewing and cataloguing such documents, and likely burden the Court with unnecessary discovery disputes.

***Third-Party Discovery***.  Given the narrow scope of Plaintiffs' discovery and Defendants' agreement to a Rule 30(b)(6) deposition, Defendants do not believe any third-party discovery is necessary to obtain information related to 2020 Census funding.

***Jurisdictional Discovery***.  To the extent there remains a live claim in this case, Defendants should be entitled discovery regarding Plaintiffs' Article III standing.

---

Secretary's estimated needs." *NAACP*, 2019 WL 355743, at *22. Additionally, as set forth below, any such documents are almost certainly privileged

5

Respectfully submitted,

/s/ Michael J. Wishnie

| | |
|---|---|
| Rachel Brown, Law Student Intern | Jeremy M. Creelan, *pro hac vice* |
| Casey Gilfoil,* Law Student Intern | Susan J. Kohlmann, *pro hac vice* |
| Daniel Ki,* Law Student Intern | Jacob D. Alderdice, *pro hac vice* |
| Nikita Lalwani, Law Student Intern | Jenner & Block LLP |
| Abigail Olson, Law Student Intern | 919 Third Avenue |
| Joseph Schottenfeld, Law Student Intern | New York, NY 10022-3908 |
| Charlotte Schwartz, Law Student Intern | *Counsel for all Plaintiffs* |
| Jeffrey Zalesin, Law Student Intern | |
| Joshua Zoffer, Law Student Intern | Khyla D. Craine (Bar No. 14117) |
| Renee Burbank[†] | Anson C. Asaka (Bar No. 20456) |
| Michael J. Wishnie (Bar No. 20350) | National Association for the Advancement |
| Rule of Law Clinic | of Colored People, Inc. |
| Yale Law School[8] | 4805 Mt. Hope Drive |
| 127 Wall Street | Baltimore, MD 21215 |
| New Haven, CT 06511 | Tel: (410) 580-5797 |
| Tel: (203) 436-4780 | Fax: (410) 358-9350 |
| michael.wishnie@ylsclinics.org | *Counsel for Plaintiffs NAACP and Prince* |
| *Counsel for all Plaintiffs* | *George's County NAACP Branch* |

---

[8] This letter does not purport to state the views of Yale Law School, if any.
*Law student interns. Petition to practice forthcoming.

[†] Application for D. Md. admission pending

6

JOSEPH H. HUNT
Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director, Federal Programs Branch

CARLOTTA P. WELLS
Assistant Director, Federal Programs Branch

*/s/ Stephen Ehrlich*
GARRETT COYLE
STEPHEN EHRLICH
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC  20005
Tel.:  (202) 305-9803
Email:  stephen.ehrlich@usdoj.gov

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I, Michael J. Wishnie, certify that copies of the foregoing letter were served this 19th day of February, 2019 upon all counsel of record by ECF.

/s/ Michael J. Wishnie
Michael J. Wishnie
