919 THIRD AVENUE  NEW YORK  NEW YORK  10022-3908                              **JENNER&BLOCK** LLP

June 19, 2019

Jeremy M. Creelan
Tel  +1 212 891 1678
jcreelan@jenner.com

**Via CM/ECF**
The Honorable Timothy J. Sullivan
United States Magistrate Judge

    Re: *NAACP, et al. v. Bureau of the Census, et al.*, No. 8:18-cv-0891 (D. Md.)

Dear Judge Sullivan:

    Plaintiffs submit this letter in response to Defendants' June 14 letter (ECF No. 127) regarding their assertion of the deliberative process privilege over all 16 spreadsheets referenced in the Basis of Estimate corresponding to the 2017 Life Cycle Cost Estimate ("LCCE") for the 2020 Census (the "2017 BoE") and all 13 spreadsheets underlying the 2019 updated version of the same document ("2019 BoE").

    **1. Defendants Have Not Shown that the Privilege Applies to the Spreadsheets**

Defendants bear the burden to be "precise and conservative" in their deliberative process privilege claims, *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1248 (4th Cir. 1994), and to establish that their withheld materials are deliberative and pre-decisional. Defendants have withheld *all* 29 spreadsheets, which were cited and relied upon for the 2017 and 2019 BoE, while citing the same generic reason in their privilege log for all of the spreadsheets: that the spreadsheets are "predecisional" and thus privileged, and that they contain "internal formulas, budgetary assumptions, and calculated cost estimates" for various key 2020 census operations. This explanation fails to meet Defendants' burden for several reasons.

First, according to the Taylor Declaration, the documents withheld "reflect the technical calculations that lead to the ultimate cost estimate that is formally approved by management and publicly released." Taylor Decl. ¶ 7. Accordingly, these spreadsheets "suppl[ied] the basis for an agency policy actually adopted," and thus are not subject to the deliberative process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 (1975). The Bureau's adoption of their employees' calculations relieves the employees of sole responsibility for their views, places on the agency the burden of explaining its position, and makes these supporting calculations an issue of "vital[] concern[]" to the public.[1] *Id.*

---

[1] Plaintiffs do not suggest that materials simply "lose their protection after the relevant decision has been made," (ECF 127 at 1 (citing *Fed. Open Mkt. Comm. of the Fed. Reserve Sys. v.*

Moreover, as the Taylor Declaration reflects, the spreadsheets do not reflect policy decisions on their own, but rather consist of the "technical calculations" supporting the decisions made in the 2017 and 2019 BoE. Taylor Decl. ¶ 6 (stating that they provide "additional detail about how career cost estimators used their expertise to translate those input costs into the outputs presented in the BOE").  Thus, they are more like the land records at issue in *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429 (D.C. Cir. 1992), as they involve neither "subjective, personal thoughts on a subject," nor "the interpretation of complex and controversial events critical to the writing of official histories," nor the thorny "political concerns implicated in locating military bases" that were at issue in *Quarles*.  *See Petroleum Info. Corp.*, 976 F.2d at 1437-38 (citations and internal quotation marks omitted).

### 2.   Even if the Privilege Applies, It Is Overcome by the Needs of This Case

Plaintiffs have indeed argued, as Defendants note, that the LCCE and the BoE are at the "crux" of Plaintiffs' underfunding claim, as they represent the Census Bureau's official and most-informed view on the various component costs that the Decennial Census will entail, and form the basis for budget requests and for internal allocation of appropriated funds. Accordingly, there is a clear need for the production of the withheld spreadsheets, even if they are privileged, to allow for the full evaluation of the reasonableness of these budgetary decisions and, ultimately, the accuracy and constitutional adequacy of the enumeration to be conducted.  (ECF 64, at 20 ("[A] census so poorly designed and so underfunded as to fail to bear a 'reasonable relationship to the accomplishment of an actual enumeration' . . . would be unconstitutional.").)  Defendants' argument that these documents are "of little relevance" reflects merely their continued insistence—contrary to the Court's opinions—that Plaintiffs' claim has no basis in the law.

Defendants argue that there would be a high cost of disclosure of these spreadsheets to Plaintiffs because the spreadsheets were prepared with the "understanding they will not be public." (ECF 127 at 2.)  But this understanding need not be undermined at all, because, unlike in the FOIA context, there is a protective order in this case (ECF 122), and assuming Defendants designate the spreadsheets "Confidential," Plaintiffs will be barred from sharing the spreadsheets with the public.  For this reason, and for the reasons explained in the section above, there is no cost associated with their disclosure.

Because they reveal the bases for the funding decisions contained in the most central documents in this case, and there is no cost associated to their confidential disclosure to Plaintiffs, the spreadsheets should be produced, even if privileged.

---

*Merrill*, 443 U.S. 340, 360 (1979) (dealing with internal competitive contract bidding information)). Rather, it is their support for an actually adopted agency decision that renders them non-privileged.  *Quarles v. Dep't of Navy*, 893 F.2d 390 (D.C. Cir. 1990), which Defendants also lean heavily upon, is not to the contrary, since the cost estimates at issue there related to port locations that were not selected.  *See id.* at 391.

Respectfully submitted,

/s/ Jeremy M. Creelan

| | |
|---|---|
| Rachel Brown,[*] Law Student Intern | Jeremy M. Creelan, *pro hac vice* |
| Casey Gilfoil, Law Student Intern | Susan J. Kohlmann, *pro hac vice* |
| Daniel Ki, Law Student Intern | Jacob D. Alderdice, *pro hac vice* |
| Nikita Lalwani, Law Student Intern | Jenner & Block LLP |
| Joshua Zoffer, Law Student Intern | 919 Third Avenue |
| Renee Burbank (Bar No. 20839) | New York, NY 10022-3908 |
| Michael J. Wishnie (Bar No. 20350) | *Counsel for all Plaintiffs* |
| Rule of Law Clinic | |
| Yale Law School[†] | Anson C. Asaka (Bar No. 20456) |
| 127 Wall Street | National Association for the Advancement of Colored People, Inc. |
| New Haven, CT 06511 | 4805 Mt. Hope Drive |
| Tel: (203) 436-4780 | Baltimore, MD 21215 |
| michael.wishniey@lsclinics.org | Tel: (410) 580-5797 |
| *Counsel/or all Plaintiffs* | Fax: (410) 358-9350 |
| | *Counsel for Plaintiffs NAACP and Prince George's County NAACP Branch* |
| | |
| | Benjamin D. Alter, *pro hac vice* |
| | National Association for the Advancement of Colored People, Inc. |
| | 50 Broadway, 31st Floor, |
| | New York, NY 10004 |
| | Tel: (212) 626-6412 |
| | Fax: (212) 248-5250 |
| | *Counsel for Plaintiffs NAACP and Prince George's County NAACP Branch* |

---

[*] Law student interns. Petition to practice forthcoming.
[†] This letter does not purport to state the views of Yale Law School, if any.