**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,** *et al.*, | \* <br> \* <br> \* <br> \* |
| **Plaintiffs,** | \* |
| v. | Case No.: PWG-18-891 |
| | \* |
| **BUREAU OF THE CENSUS,** *et al.*, | \* |
| **Defendants.** | \* |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION AND ORDER**

The Constitutionally-mandated decennial count of the population of the United States as of April 1, 2020 is underway. This complex and important endeavor has occurred every ten years since 1790, and every census to date has been challenged in the effort to accomplish "an 'actual Enumeration' of the population." *Wisconsin v. New York*, 517 U.S. 1, 6 (1996). An unfortunate outcome of each census has been that "some segments of the population are 'undercounted' to a greater degree than are others, resulting in a phenomenon termed the 'differential undercount.'" *Id.* at 7.[1] Some groups have proven more difficult to count; "hard-to-count" groups "include racial and ethnic minorities, lower income people, the homeless, undocumented immigrants, young and mobile people, children, LGBTQ individuals, and 'persons who are angry at and/or distrust the government.'" Third Am. Compl. ¶ 22, ECF No.

---

[1] For example, in 1940, "when the undercount for the entire population was 5.4%, the undercount for blacks was estimated at 8.4% (and the undercount for whites at 5.0%)." *Wisconsin*, 517 U.S. at 7. In 1980, "the overall undercount was estimated at 1.2%, and the undercount of blacks was estimated at 4.9%." *Id.*

168. Plaintiffs[2] and Defendants[3] in this litigation share a common goal—to accomplish a successful 2020 census that results in a more accurate enumeration and avoids or reduces a differential undercount of hard-to-count populations. The dispute here is about how best to secure those results.

This litigation began on March 28, 2018. Pending before me are the following motions: Defendants' Motion to Dismiss [the Third Amended Complaint] and Motion for Summary Judgment (ECF No. 170); Plaintiffs' Motion Pursuant to Federal Rule of Civil Procedure 56(d) (ECF No. 176); and Defendants' Motion in Limine (ECF No. 179), which seeks to exclude Plaintiffs' expert declarations. Although I advised counsel during the in-court hearing on the Plaintiffs' Motion for a Preliminary Injunction held on March 5, 2020 that I was considering having another hearing on these other pending motions, the outbreak of the COVID-19 pandemic and its resulting restrictions on normal court proceedings has resulted in the suspension of in-court hearings. Faced with delaying a ruling until the unprecedented public health crisis has abated (a much-hoped-for date in the future that no one can predict at the present with any accuracy) or re-examining the filings to determine whether a ruling may be made without the need of a hearing, I have chosen to re-review the filings regarding the pending motions to assess whether a ruling without a hearing can be made. Having done so, I have concluded that a hearing is not necessary.[4] *See* Loc. R. 105.6 (D. Md. 2018). Because Plaintiffs do not plausibly

---

[2] Plaintiffs are the National Association for the Advancement of Colored People ("NAACP"); Prince George's County (the "County"); Prince George's County Maryland NAACP Branch (the "County NAACP"); Robert E. Ross, President of the County NAACP; and H. Elizabeth Johnson, County NAACP Executive Committee member. Third Am. Compl. ¶¶ 4-8.

[3] Defendants are the Bureau of the Census ("Census Bureau"), an agency of the United States Department of Commerce that oversees and implements the decennial census; Steven Dillingham, Director of the Census Bureau; and Wilbur Ross, Secretary of the Department of Commerce. Third Am. Compl. ¶¶ 9-11.

[4] Shortly after filing the Third Amended Complaint, Plaintiffs filed a Motion for Preliminary Injunction, ECF No. 169. Defendants responded in opposition combined with a Motion to Dismiss and

allege that the Census Bureau's plan fails to bear a reasonable relationship to an actual enumeration or that any of the Census Bureau's actions unreasonably compromise the distributive accuracy of the census, I shall GRANT Defendants' Motion to Dismiss. Accordingly, the remaining motions shall be DENIED AS MOOT.

## BACKGROUND

In brief,[5] this litigation began when Plaintiffs filed a Complaint alleging one count of Defendants' violating the Enumeration Clause of the United States Constitution. Compl., ECF No. 1. At that time, with the 2020 Census two years away, Plaintiffs alleged that the Census Bureau was not prepared to conduct the census in a manner that would result in an accurate count of the country's population, as required by the Enumeration Clause. *Id.* The Census Bureau was then without a permanent director or deputy director, it had canceled essential field tests, and in Plaintiffs' view, it lacked "sufficient funding to address its many challenges." *Id.* I held that Plaintiffs' claim challenging the Census Bureau's preparedness to conduct the census was not yet ripe and dismissed it without prejudice, but found that the lack-of-funding claim was ripe for relief and could proceed. Jan. Mem. Op. 6, 55.

---

for Summary Judgment, ECF No. 170, and Plaintiffs filed a response in opposition and Reply, ECF No. 175. Defendants filed a Reply, ECF No. 177-1. Plaintiffs also filed a Motion Pursuant to Federal Rule of Civil Procedure 56(d), ECF No. 176, to which Defendants filed a response, ECF No. 178, and Plaintiffs filed a Reply, ECF No. 183. Late on March 4, 2020, Defendants filed a Motion in Limine, ECF No. 179, to exclude two of Plaintiffs' declarations, which I denied for purposes of the preliminary injunction motion, without prejudice to be revisited in light of the remaining motions. *See* Order 1 n.1, ECF No. 182. I held a hearing on the Preliminary Injunction motion on March 5, 2020.

[5] The parties are sufficiently aware of the background of this lawsuit, so I shall recite only a brief history of how we got here. For a more complete background, see the January 29, 2019 Memorandum Opinion and Order (ECF No. 64) ("Jan. Mem. Op."); the August 1, 2019 Memorandum Opinion and Order (ECF No. 154) ("Aug. Mem. Op."); and the Fourth Circuit Published Opinion (ECF No. 162-2). These decisions can also be found here: 382 F. Supp. 3d 349 (D. Md. 2019); 399 F. Supp. 3d 406 (D. Md. 2019); and 945 F.3d 183 (4th Cir. 2019).

Shortly thereafter, in February 2019, Congress appropriated $3.5 billion for the 2020 census, at the same time ending the longest shutdown of the United States government in history, and the Census Bureau also released its final operational plan. *See* Aug. Mem. Op. 1. Plaintiffs amended the Complaint to add Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, claims and allegations updating the factual developments, but I denied as not yet ripe Plaintiffs' request to reinstate the dismissed Enumeration Clause claim. *See* Second Am. Compl., ECF No. 91; Feb. 28, 2019 Ltr. Order, ECF No. 76. In August 2019, I granted Defendants' motion to dismiss the lack-of-funding claim as moot, and I also dismissed the APA claims because the Census Bureau's final plan is not a final agency action that is reviewable under the APA. Aug. Mem. Op. Plaintiffs appealed the dismissal of the APA claims as well as the denial of their request to reinstate the dismissed Enumeration Clause claim.

In December 2019, the Fourth Circuit affirmed the dismissal of the APA claims but ruled that Plaintiffs' Enumeration Clause claim became ripe for review once the Census Bureau announced that the operational plan was final. *See* 945 F.3d at 192-93. In so holding, the Fourth Circuit did not review whether the Plaintiffs' Enumeration Clause claim "state[d] facts plausibly establishing a constitutional violation." *Id.* at 193. On remand, Plaintiffs filed the Third Amended Complaint alleging only one claim—violation of the Enumeration Clause of the United States Constitution, Art. I, § 2, cl. 3. ¶¶ 183-88. They also filed a Motion for Preliminary Injunction, ECF No. 169, which I denied. *See* Order, Mar. 5, 2020, ECF No. 182. Defendants moved to dismiss the Third Amended Complaint or, in the alternative, to grant summary judgment to Defendants. Defs.' Mot. Dismiss, ECF No. 170. In response, Plaintiff filed a motion pursuant to Federal Rule of Civil Procedure 56(d) requesting that I deny Defendants' motion for summary judgment or defer ruling until Plaintiffs had the opportunity to take

discovery on Defendants' factual assertions. Pls.' Mot. 56(d), ECF No. 176. Also pending before me is Defendants' motion in limine to exclude the declarations of Plaintiffs' experts, which I denied for purposes of the preliminary injunction motion, without prejudice to revisiting the motion for the purposes of the pending motions. *See* Mot. Limine, ECF No. 179; Order, Mar. 5, 2020 at n.1.

For the reasons that follow, I shall GRANT Defendants' dismissal motion and the remaining motions shall be DENIED AS MOOT.

## STANDARD OF REVIEW

Defendants contend that Plaintiffs' claims are not justiciable because they are barred by the political question doctrine, Defs.' Mot. 24, and even if justiciable, this Court lacks subject matter jurisdiction because Plaintiffs lack standing, *id.* at 26.[6] Defendants' also move to dismiss on the basis that Plaintiffs fail to plausibly allege, or create a genuine issue of material fact in support of, their claims. *Id.* at 33.

When a defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, asserting a facial challenge that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," as Defendants do here, "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (noting that, on a motion to dismiss, a plaintiff's pleading of the elements of standing are "presum[ed]

---

[6] When a plaintiff does not have standing or presents a political question, its claim is not justiciable. *Flast v. Cohen*, 392 U.S. 83, 95 (1968); *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 198 (4th Cir. 2013). "Justiciability is an issue of subject-matter jurisdiction." *Hamilton v. Pallozzi*, 848 F.3d 614, 619 (4th Cir.), *cert. denied*, 138 S. Ct. 500 (2017).

[to] embrace those specific facts that are necessary to support the claim" (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990))).

Pursuant to Rule 12(b)(6), a plaintiff's claims are subject to dismissal if they "fail[ ] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

Whether considering a Rule 12(b)(1) factual challenge or a Rule 12(b)(6) motion, the Court may take judicial notice of "fact[s] that [are] not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Additionally, the Court may "consider documents that are explicitly incorporated into the complaint by reference." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *see also Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013) ("The court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed."); *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); Fed. R. Civ. P. 10(c) ("A copy of a written instrument

that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011).

Here the 2020 Census Operational Plan, which is available on the Census Bureau's website, and which Plaintiffs cite to and quote from extensively in their Third Amended Complaint (*e.g.*, Third Am. Compl. 2, ¶¶ 33-34, 36, 48, 56, 61-62, 79, 93-95, 101, 126, 132, 139) is integral to the Complaint, and its authenticity has not been challenged. Likewise, Appendix B of the plan—describing the integrated operations specifically designed to reach hard-to-count populations—was attached to Defendants' dismissal motion, its authenticity has not been challenged, and it is integral to the Complaint. ECF No. 170-2, Ex. A. Therefore, the Court may consider them when deciding the motion to dismiss.

## ANALYSIS

**I.     Subject Matter Jurisdiction**

In my first decision, I found that Plaintiffs' allegations relating to the Enumeration Clause claim were sufficient to confer standing and that judicial review was not barred by the political question doctrine. *See* Jan. Mem. Op. 6, 53; *see also* 945 F.3d at 187 (noting same); *id.* at 194 (Gregory, C.J., concurring) ("The question—whether Congress, by agency of the Executive Branch's Bureau of the Census, has violated the Enumeration Clause of the Constitution because it has demonstrated that it will unlikely make a meaningful and faithful enumeration of all persons in the upcoming 2020 Census—is not a political one."). Notably, I observed that Plaintiffs' injuries were not too speculative, were traceable to Defendants, could be redressed,

and that "[c]ourts have routinely held that the Enumeration Clause does not textually commit exclusive, non-reviewable control over the census to Congress." Jan. Mem. Op. 41, 50, 53 (citation omitted).[7] My reasoning has not changed, and the Fourth Circuit has directed that the controversy became ripe once the final design for the census was announced. *See* 945 F.3d at 192-93 (citing *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) and *U.S. House of Representatives v. U.S. Dep't of Commerce*, 11 F. Supp. 2d 76, 91 (D.D.C. 1998)).

Therefore, I shall turn to whether Plaintiffs' Enumeration Clause claim states facts plausibly establishing a constitutional violation.

## II.   Failure to State a Claim

"The Constitution requires that the Census be conducted in a manner that bears 'a reasonable relationship to the accomplishment of an actual enumeration of the population,' while keeping in mind the enumeration's other constitutional purposes (i.e. apportionment and equal protection)." *La Unión del Pueblo Entero v. Ross*, 353 F. Supp. 3d 381, 392 (D. Md. 2018) (quoting *Wisconsin,* 517 U.S. at 20). And, "[a]lthough the Census Clause does not require the Census Bureau to achieve perfect accuracy, it does require that a preference be given for 'distributive accuracy (even at the expense of some numerical accuracy).'" *Id.* (quoting *Wisconsin*, 517 U.S. at 20).

To state a claim for violation of the Enumeration Clause, Plaintiffs must allege that Defendants' preparations (or sufficiency thereof) for the 2020 Census "unreasonably compromise[ ] the distributive accuracy of the census." *Id.*; *see also Kravitz v. U. S. Dep't of*

---

[7]   Certainly, Plaintiffs' concerns are legitimate given that a fully accurate census has never been accomplished, and even without achieving a perfect count, Plaintiffs desire for improvement beyond past performance is a reasonable basis for scrutiny. *See Wisconsin*, 517 U.S. at 6 ("Although each [of the first twenty censuses] was designed with the goal of accomplishing an 'actual Enumeration' of the population, no census is recognized as having been wholly successful in achieving that goal.").

*Commerce*, 336 F. Supp.3 d 545, 565 (D. Md. 2018).  Conclusory statements alone will not suffice, and statements of legal conclusions are not afforded the same assumption of truth as factual statements.  *Iqbal*, 556 U.S. at 678-79; *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011).

Plaintiffs assert that in my earlier decision, I held that they had sufficiently alleged that the manner in which Defendants were proceeding with the 2020 Census would unreasonably compromise the distributive accuracy of the census, thereby stating a claim for violation of the Enumeration Clause.  Pls.' Resp. 31 (citing Jan. Mem. Op. at 54-55).  My holding, however, referred to the then near total lack of census funding and the lapse of congressional appropriations that led to the government shutdown.  A dispute over how the Census Bureau conducts the census once the government is operational and Congress has fully funded the census is substantially different, and therefore my prior holding with respect to the Plaintiffs' Enumeration Clause claim has little value in resolving the claim currently pending before me.  Therefore, I must consider anew whether Plaintiffs' allegations regarding the conduct of the census are sufficient to state a plausible Enumeration Clause claim.

Plaintiffs allege that Defendants have adopted a program for the 2020 Census that does not bear a reasonable relationship to the accomplishment of an actual enumeration, citing the following design choices that Plaintiffs consider serious design defects: (1) the Census Bureau significantly reduced resources for the partnership and community outreach program; (2) the Census Bureau has hired an unreasonably small number of enumerators; (3) the Census Bureau dramatically reduced the number of census field offices compared with the 2010 census; (4) the Census Bureau's decision to rely on in-office address canvassing rather than field work to assemble the census master address file; and (5) making more limited efforts to count inhabitants

9

of units that appear vacant or nonexistent based on administrative records. *See* Third Am. Compl. ¶¶ 36-37.[8] Plaintiffs allege that these design decisions, individually and collectively, demonstrate an abandonment of the goal of reaching hard-to-count communities and will fail to achieve an actual enumeration of the population. *Id.* at ¶ 38.

The goal, according to the 2020 Census Operational Design, "is to count everyone once, only once, and in the right place." 2020 Census Operational Design, ECF No. 170-2, Ex. A. The Census Bureau describes the ideal path of a response for the first-ever digital census: an individual receives an invitation letter and uses the provided identifier to complete the response by computer or similar digital device. *Id.* But the Census Bureau acknowledges that our world is not ideal for everyone, so the plan includes activities and operations that are specifically designed to reach hard-to-count populations. *Id.* As this is the first census supporting the direct collection of responses electronically, the plan necessarily differs in its very essence from prior census plans and past spending priorities, which relied entirely on paper-based questionnaires and responses. As such, direct comparison of the spending priorities and resource allocations of the 2010 census and the plans for the digital 2020 census are of limited value. Comparing the two is like comparing dogs to cats—superficial similarities, but fundamental differences at the core. Defendants have not refused to spend allocated funds; they have allocated resources differently and reserved a budget contingency to react as needed during the "Nonresponse Followup" phase when the actual electronic response rates are known. *Id.* That bears a

---

[8] I note that in their response to the dismissal motion, the Plaintiffs appear to have acknowledged that there has been a recent increase in communications and advertising funding in line with the 2010 expenditures that Plaintiffs had sought, Pls.' Reply 8-9, have redirected their contention regarding the lack of in-field offices and funding for mobile questionnaire assistance centers to a more direct contention about the adequacy of the M-QAC program itself, *id.* at 9-12, and make no mention of the contention that the Census Bureau has replaced in-field address canvassing with in-office canvassing.

reasonable relationship to the accomplishment of an actual enumeration of the population. Defendants reduced the number of field offices and replaced them with mobile questionnaire assistance centers that could be deployed where and when needed. *Id.* That too bears a reasonable relationship to the accomplishment of an actual enumeration of the population. Defendants reduced clerical positions and physical facilities in anticipation that there will be less paper to handle as a result of the new digital collection process. Again, this too bears a reasonable relationship to the accomplishment of an actual enumeration.

Plaintiffs allege in a conclusory fashion that these differences, especially in comparison to the 2010 census, will inevitably result in a higher differential undercount, and thus are inherently unreasonable and unconstitutional. While I accept Plaintiffs' factual allegations—such as that the Census Bureau has reduced the number of field offices—as true, I do not accept Plaintiffs' legal characterization that the Defendants' design choices, individually or in sum, represent an unreasonable relationship to the accomplishment of an actual enumeration. This is particularly so when the standard by which I must determine whether the plans for the 2020 census bear a reasonable relationship to an actual enumeration is as deferential to the decision-making of the Secretary of the Department of Commerce as the Supreme Court has made clear that it is.

The standard for evaluating the Census Bureau's decisions was articulated by the United States Supreme Court in *Wisconsin v. New York* in 1996, in which the Court noted that "[t]he text of the Constitution vests Congress with virtually unlimited discretion in conducting the decennial 'actual Enumeration.'" 517 U.S. at 19. This "deference arises not from the highly technical nature of [the] decision, but rather from the wide discretion bestowed by the Constitution upon Congress, and by Congress upon the Secretary." *Id.* at 23. Recently, in the

context of reviewing the information to be collected in the census questionnaire, the Supreme Court reiterated the broad authority over the census that has been afforded to Congress. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2567 (2019). Certainly, that discretion is not unbounded. *Id.* at 2568. However, I do not see any justification to substitute my judgment for that of the Census Bureau's, and its plan for conducting the 2020 census—the result of a decade of planning—on its face bears a reasonable relationship to the accomplishment of an actual enumeration.

I have located no case where a court has found a violation of the *Wisconsin* reasonable relationship standard, and neither party has cited such a case. Indeed, when citing authority for the relief they seek, Plaintiffs rely heavily on *Carey v. Klutznick*, 637 F. 2d 834 (2d Cir. 1980) ("*Carey I*"). It is true that in *Carey I*, the district court granted a preliminary injunction[9] requiring the Census Bureau to take certain action after the census field work had been completed and the preliminary reports of its outcome had been reported (but not finally approved by the Secretary of the Department of Commerce, or sent by the President to the House of Representatives), and that the Second Circuit affirmed. But *Carey I* is not a case to bet the ranch on, because the plaintiffs' victory was evanescent. The Second Circuit later reversed the trial court's judgment on the dismissal motion and criticized the district court for not having considered the impact of its judgment in favor of the plaintiffs on the allocation of representatives and federal funds to other (non-party) states, which potentially were adversely impacted by the judgment. *Carey v. Klutznick*, 653 F.2d 732 (2d Cir. 1981) ("*Carey II*"). But more importantly, *Carey I* was decided in 1980—sixteen years before the Supreme Court

---

[9]   The district court's preliminary injunction decision can be found at 508 F. Supp. 416 (S.D.N.Y. 1980). The district court also ruled in plaintiffs' favor by denying defendants' motion to dismiss in a separate decision found at 508 F. Supp. 404 (S.D.N.Y. 1980).

announced *Wisconsin*, with its highly deferential "reasonable relationship to an actual enumeration of the population" test. 517 U.S. 1. In fact, the only successful pre-census challenge to the Secretary's design for the conduct of a decennial census rendered after the *Wisconsin* decision was *Department of Commerce v. U.S. House of Representatives*, 525 U.S. 316 (1999). That case was based on a challenge to the decision of the Census Bureau to use statistical sampling during the non-response follow-up phase of the 2000 census, which contravened the Census Act's prohibition against using statistical sampling in the apportionment of representatives, rather than a challenge based on the Enumeration Clause of the Constitution.

My evaluation of the controlling case law since *Wisconsin* leads me to the following conclusions regarding the proper application of the "reasonable relationship to an actual enumeration of the population" test: (1) it must be applied with the recognition that, despite the command of the Enumeration Clause that there be an "actual enumeration" during a decennial census, there has never in our country's history been a completely accurate enumeration of the entire population, and absolute perfection is neither possible nor required; (2) the discretion afforded by the Constitution to Congress, and subsequently delegated by Congress to the Secretary, to design and conduct the decennial census is "virtually unlimited;" and (3) when reviewing how the Secretary has elected to exercise the delegated discretion, the Court must afford the Secretary substantial deference. Applying these standards to the pleadings and supporting documents appropriately considered when ruling on a motion to dismiss for failure to state a claim, I cannot but conclude that the Plaintiffs have failed to state a viable violation of the Enumeration Clause.

Further, the Census Bureau's budget for the 2020 census was a lump sum appropriation, which it can allocate as it sees fit, because "the agency is far better equipped than the courts to

deal with the many variables involved in the proper ordering of its priorities." *Lincoln v. Vigil*, 508 U.S. 182, 192-93 (1993). As the Supreme Court stated, "the very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Id.* This is certainly a time when the agency needs the flexibility to adapt to changing circumstances—whether from advances in technology, or the impact of a global pandemic. Neither Plaintiffs nor the court have been delegated the function of carrying out the census. There were myriad detailed decisions taken by the Census Bureau on the basis of fundamental design differences between the 2020 digitally-enabled census and the 2010 paper-based census. Second-guessing these decisions does not result in a plausible allegation that the decisions taken by the Census Bureau are unreasonable.

Therefore, I shall GRANT Defendants' motion to dismiss, because Plaintiffs do not plausibly allege that the Census Bureau's plan fails to bear a reasonable relationship to an actual enumeration or that any of the Census Bureau's actions unreasonably compromise the distributive accuracy of the census.

Lastly, "'[t]he determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court.'" *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825-26 (D. Md. 2013) (quoting *180S, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638-39 (D. Md. 2009)). Generally, the plaintiff should be afforded an opportunity to amend, *see id.*, or dismissal should be without prejudice. *See Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013) ("Where no opportunity is given to amend the complaint, the dismissal should generally be without prejudice."). Here, Plaintiffs were given an opportunity to amend. I

realize, however, that once the results of the census are known,[10] Plaintiffs may find their worst fears have been realized and again seek to amend their Enumeration Clause claim to seek a remedy.  *See, e.g.*, *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) ("For potential litigants, therefore, the 'decennial census' still presents a moving target, even after the Secretary reports to the President.").  Therefore, I shall grant the motion to dismiss without prejudice to Plaintiffs' ability to seek leave to amend within 60 days of the census results being announced by the Secretary of Commerce.  However, I caution the Plaintiffs that no amendment will be permitted without the filing of a motion to amend, which establishes that allowing another amendment would be both appropriate and not futile.

**ORDER**

For the foregoing reasons, it is, this 16th day of April, 2020, hereby ORDERED that:

1. Defendants' Motion to Dismiss [the Third Amended Complaint] and Motion for Summary Judgment (ECF No. 170) is GRANTED IN PART and DENIED IN PART AS MOOT;

   a. Defendants' Motion to Dismiss is GRANTED and Plaintiffs' Third Amended Complaint is DISMISSED WITHOUT PREJUDICE to Plaintiffs' ability to seek leave to amend within 60 days of the census results being announced by the Secretary of Commerce;

   b. Defendants' Motion for Summary Judgment is DENIED AS MOOT;

2. Plaintiffs' Motion Pursuant to Federal Rule of Civil Procedure 56(d) (ECF No. 176) is DENIED AS MOOT;

3. Defendants' Motion in Limine (ECF No. 179) is DENIED AS MOOT; and

---

[10] The census results serve an important constitutional purpose—they are used to apportion the members of the House of Representatives among the States.  *Wisconsin*, 517 U.S. at 6.  Additionally, the federal government considers census data in dispensing funds through federal programs to states, and states use census data to draw interstate political districts.  *Id.*

  4.  The Clerk SHALL CLOSE this case.

                /S/
            Paul W. Grimm
            United States District Judge